IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON
(EUGENE DIVISION)

| | | |
|---|---|---|
| RUSS WALKER and GLENN PELIKAN, | ) | CASE NO. 08-06135-HO |
| | ) | |
| Plaintiffs, | ) | ORDER |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE OF OREGON, by and through KATE | ) | |
| BROWN, Secretary of State for the | ) | |
| State of Oregon | ) | |
| Defendants, | ) | |
| | ) | |

Background

Plaintiffs in their Second Amended Complaint challenge the

constitutionality of a series of statutes enacted as §§ 2, 3, 5,

7, 8 and 16-27 of House Bill 2082 (2007)[1] (HB 2082) by the Oregon

Legislative Assembly, which concern various aspects of the

initiative petition and referendum process. (#32).  Plaintiff

Russ Walker is a Marion County resident who is (and will be) a

---

[1]  This house bill became Chapter 848, Or. Laws 2007.  (#33).

1 - ORDER

frequent chief petitioner on Oregon initiative measures.  (#32, p.2).  Plaintiff Glenn Pelikan, a Multnomah County resident, is also a frequent chief petitioner and is the chief petitioner for two initiative petitions for the 2010 election.  *Id.*.

Plaintiffs seek declarations that HB 2082 violates plaintiffs' First Amendment rights to engage in core political speech, deprives chief petitioners' free speech rights without due process in violation of the Fourteenth Amendment, deprives plaintiffs of equal protection of law in violation of the Fourteenth Amendment by burdening plaintiffs' ability to engage in core political speech, and authorizes unreasonable search and seizure of business records, including trade secrets, in violation of plaintiffs' Fourth Amendment rights.  The second amended complaint further seeks injunctive relief and attorney fees and costs, pursuant to 42 U.S.C. §§ 1983 and 1988, respectively.  *Id.*

The parties have filed cross motions for summary judgment. (#37 and #44).  The State defendants have also filed a motion to strike various affidavits and exhibits submitted by plaintiffs on the grounds that the submissions are irrelevant, not authenticated and lack foundation.  ((#48)

///

///

///

2 - ORDER

<u>Discussion</u>

I.   State Defendants' Motion to Strike

        Fed. R. Civ. P. 12(f) provides that "[t]he court may
strike from a pleading an insufficient defense or any redundant,
immaterial, impertinent or scandalous matter."  Fed. R. Civ. P.
7(a) defines 'pleadings' as a complaint and answer a reply to a
counterclaim; an answer to a cross-claim; and a third party
complaint and answer."  *Morrison v. Mahoney,* 399 F.3d 1042, 1046,
(9th Cir. 2005).

        Consequently, the federal rules' plain language provides no
basis for striking affidavits or exhibits offered in support of a
motion for summary judgment or other filings as these documents
are not "pleadings."  However, to the extent an affidavit or
exhibit is defective and therefore inadmissible, or a filing not
permitted, the court may disregard the evidence in ruling on the
motion.  <u>See</u> *Rossi v. Trans World Airlines,* 507 F.2d 404, 406
(9th Cir. 1974)(affirming the district court's decision to
disregard an affidavit containing inadmissible hearsay).

        Plaintiffs have filed 11 affidavits and declarations and 57
exhibits.  (#42)  Defendants object to all affidavits and
declarations except for the affidavit of attorney Tyler Smith.
(#48).  Defendants also object to exhibits 1-31, 33-48, 50-52 and
54-56.  *Id.*  Defendants argue that the affidavits (save that of
Tyler Smith) and declarations and exhibits 1-31, 33-36, 48 and 56

3 - ORDER

are irrelevant by virtue of the facial nature of plaintiff's challenge to HB 2082. (## 49, 58). Defendants further argue that: exhibits 1, 2, 4, 5 and 6 are irrelevant under any theory, exhibits 1-27, 30, 31, 33-39, 41, 43-52, 54-56 are not referenced in any statement of fact of memorandum, exhibits 6, 7, 16, 23, 48, 51, 52 and 54 are not authenticated, and exhibit 5, page 1 and exhibits 6, 9 and 10 lack foundation. *Id.*

In a facial challenge to a state law burdening petition circulation, evidence and trial may be necessary to assess the severity of the burden. <u>See</u> <u>e.g.</u> *Buckley v. American Const. Law Foundat'n*, 525 U.S. 182 (1999) (affirming court of appeals' rulings affirming in part and reversing in part district court's rulings, after trial, that Colorado statutes regulating petition process violated the First Amendment). Furthermore, a facial challenge to a facially content-neutral licencing law may fail for lack of evidence of the effect of the law, such as evidence of abuse of discretion conferred by the law. <u>See</u> *Southern Oregon Barter Fair v. Jackson County, Or.*, 372 F.3d 1128, 1140 (9th Cir. 2004).

As defendants appear to later recognize in their briefing, the relevance of evidence of the burdens imposed by HB 2082. (#49,p.3, #58,p.3, & n.1), the facial nature of plaintiff's challenge to HB 2082 does not render the affidavits and declarations and exhibits 1-31, 33-36, 48 and 56 entirely

4 - ORDER

irrelevant.  I also note that defendants have withdrawn their foundational objections (other than the objection of lack of personal knowledge) to plaintiff's witnesses who while reciting that they have personal knowledge of facts stated in their affidavits and declarations, have many speculative statements therein.

Accordingly I construe defendants' Motion to Strike (#48) as objections to plaintiffs' evidence and therefore deny defendants' motion while assuring defendants that I will not permit a triable issues of fact to be based on inadmissable evidence.

II.  Motions for Summary Judgment

**A.  Standard of Review:**

Fed. R. Civ. P. 56©) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an genuine issue of material fact. *Leisek v. Brightwood Corp.,* 278 F.3d 895, 898 (9th Cir. 2002). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986).  The Court must draw all reasonable inferences in the favor of the nonmoving party.  *Id.*

///

///

5 - ORDER

**B.    Undisputed Facts:**

Section 2 of HB 2082 provides:

(1) A person may not pay money or other valuable
consideration to another person for obtaining
signatures of electors on a state initiative,
referendum or recall petition, and a person may not
receive money or other valuable consideration for
obtaining signatures of electors on a state initiative,
referendum or recall petition, unless the person
obtaining the signatures:
     (a) Registers with the Secretary of State in the
manner prescribed by this section and by rule of the
secretary; and
     (b) Completes the training program prescribed by
rule of the secretary.

(2) A person may apply to the secretary for a
registration required under subsection (1) of this
section. The application shall include:
     (a) The full name and any assumed name of the
applicant;
     (b) The residential street address of the
applicant;
     (c) An example of the signature of the applicant;
     (d) A list of the initiative, referendum and
recall petitions on which the applicant will gather
signatures;
     (e) If the applicant has been convicted for a
criminal offense involving fraud, forgery or
identification theft, information relating to the
circumstances of the conviction as required by the
secretary;
     (f) A statement signed by the applicant
acknowledging that the applicant has read and
understands Oregon law applicable to the gathering of
signatures on state initiative, referendum and recall
petitions, as the law is summarized in the training
program established by the Secretary of State;
     (g) Evidence indicating that the applicant has
completed the training required by the secretary by
rule;
     (h) A photograph of the applicant; and
     (I) A statement signed by a chief petitioner of
each petition upon which the applicant will gather
signatures acknowledging that the chief petitioner is
liable for violations of law or rule committed by the

person obtaining signatures as provided in ORS 260.561.

(3) If an applicant complies with subsection (2) of this section, not later than two business days after the applicant applies, the secretary shall register the applicant and assign the applicant a registration number.

(4) A person who has been convicted for a criminal offense involving fraud, forgery or identification theft in any state during the five-year period prior to the date of the application may not apply for registration under this section.

(5) If a person receives money or other valuable consideration for obtaining signatures of electors on a state initiative, referendum or recall petition and the person was not registered as required under this section at the time the signatures were obtained, the secretary may not count the signatures under ORS 250.105 or ORS chapter 249 for purposes of determining whether the petition contains the required number of signatures of electors.

(6) A person registered under this section shall carry evidence of registration with the person while the person is obtaining signatures on a state initiative, referendum or recall petition. The evidence of registration shall contain the photograph and registration number of the person. The secretary by rule shall designate the form of the evidence of registration.

(7) A photograph of an applicant submitted under subsection (2) of this section shall:
    (a) Be a conventional photograph with a plain background;
    (b) Show the face or the face, neck and shoulders of the applicant; and
    (c) Be prepared and processed for printing as prescribed by the secretary.

(8) The secretary shall adopt rules necessary to implement this section, including rules:
(a) Establishing procedures for registering persons who may be paid money or other valuable consideration for obtaining signatures of electors on state initiative, referendum or recall petitions; and

7 - ORDER

(b) Establishing a training program for persons who may be paid money or other valuable consideration for obtaining signatures of electors on state initiative, referendum or recall petitions.

Or. Rev. Stat. § 250.048.

Section 3 provides:

(1) For each state initiative, referendum or recall petition, the Secretary of State shall prepare official templates of the cover and signature sheets for the petition. Except as provided in this section, templates of cover and signature sheets for state initiative and referendum petitions are subject to the requirements of ORS 250.045. The templates of signature sheets to be used by persons who are being paid to obtain signatures on the petition shall be a different color from the sheets to be used by persons who are not being paid to obtain signatures on the petition.

(2) A person obtaining signatures on a state initiative, referendum or recall petition may use only the cover and signature sheets contained in the official templates prepared for the petition. A person who is being paid to obtain signatures on the petition shall use the signature sheet template designated for use by persons being paid to obtain signatures. A person who is not being paid to obtain signatures on the petition shall use the signature sheet template designated for use by persons who are not being paid to obtain signatures.

(3) The secretary shall issue templates for a petition only to a chief petitioner of the petition or to an agent designated by a chief petitioner.

(4) The secretary shall issue official templates to a chief petitioner or designated agent not later than:
(a) Three business days after the deadline for filing a petition under ORS 250.085 relating to a ballot title certified by the Attorney General for the state initiative petition or, if a petition is filed with the Supreme Court under ORS 250.085, three business days after the Supreme Court certifies to the Secretary of State a ballot title for the state initiative petition; or
(b) Three business days after a prospective

8 - ORDER

petition is filed under ORS 249.865 or 250.045 for a
state recall petition or state referendum petition.

(5) Not later than five business days after the
deadline for the secretary to issue templates under
subsection (4) of this section, a chief petitioner of a
state initiative, referendum or recall petition may
submit to the secretary a written request for
modification of the templates. The secretary shall
approve or disapprove the request not later than five
business days after receiving the request. If the
secretary disapproves the request, the secretary shall
advise the chief petitioner in writing of the reasons
for the disapproval.

(6) In addition to the templates prepared under
subsections (1) to (5) of this section, for each state
initiative, referendum or recall petition, the
secretary shall prepare an official electronic template
of a signature sheet for the petition. A template
prepared under this subsection shall allow space for
the signature of one elector. An elector may print a
copy of the electronic signature sheet for a petition,
sign the sheet and deliver the signed sheet to a chief
petitioner or an agent designated by a chief
petitioner. Electronic templates described in this
subsection are subject to the requirements of ORS
250.045, other than ORS 250.045 (5), (8) and (9).

(7) The secretary shall adopt rules prescribing the
contents and method of production of official templates
required under this section.

Or. Rev. Stat. § 250.052.

Section 5 provides:

(1) As used in this section, "accounts" means,
     (a) Any contract entered into by a chief petitioner of
an initiative or referendum petition and any person for
purposes of obtaining signatures on the initiative or
referendum petition or on a prospective petition for a state
measure to be initiated;
     (b) Any employment manual or training materials
provided to persons who obtain signatures on the
petition or prospective petition;
     (c) Payroll records for each employee obtaining
signatures on the petition or prospective petition

9 - ORDER

showing hours worked, number of signatures collected
and amounts paid;
        (d) Records identifying the amount and purpose of
each payment made by the chief petitioner or any
contractor, as defined in ORS 260.563, to any
subcontractor, as defined in ORS 260.563, obtaining
signatures on the petition or prospective petition; and
        (e) Copies of signature sheets circulated by
persons who are being paid to obtain signatures on the
petition or prospective petition.
(2) For purposes of enforcing section 1b, Article IV of
the Oregon Constitution, a chief petitioner of an
initiative or referendum petition who pays any person
money or other valuable consideration to obtain
signatures on the petition or prospective petition
shall keep detailed accounts. The accounts shall be
current as of not later than the seventh calendar day
after the date a payment is made to a person for
obtaining signatures on the petition or prospective
petition.

(3) The Secretary of State shall review the accounts of
each chief petitioner described in subsection (2) of
this section in the manner and according to a regular
schedule adopted by the secretary by rule.

(4) In addition to the review conducted under
subsection (3) of this section, the secretary, Attorney
General or Commissioner of the Bureau of Labor and
Industries may inspect the accounts of a chief
petitioner described in subsection (2) of this section
under reasonable circumstances at any time before the
deadline for filing signatures on the petition or
during the period specified for retention of the
accounts under subsection (5) of this section.  The
right of inspection may be enforced by writ of mandamus
issued by any court of competent jurisdiction.

(5) A chief petitioner must preserve the accounts
pertaining to an initiative or referendum petition or a
prospective petition for a state measure to be
initiated for at least two years after the deadline for
filing the petition for verification of signatures or
at least two years after the date the last statement is
filed under ORS 260.118, whichever is later.

(6) If a chief petitioner does not produce accounts
under subsection (3) or (4) of this section:

10 - ORDER

> (a) There is a rebuttable presumption that a
> violation of section 1b, Article IV of the Oregon
> Constitution, has occurred; and
> (b) The chief petitioner may not obtain additional
> signatures on the petition or prospective petition
> until the chief petitioner is able to supply the
> accounts to the secretary, Attorney General or
> commissioner.
>
> (7) Accounts are not subject to disclosure under ORS 192.410
> to 192.505.

Or. Rev. Stat. § 260.262.

> Section 7 provides:
>
> (1) As used in this section:
>   (a) "Contractor" means a person who contracts on
> predetermined terms with a chief petitioner, or a
> person acting on behalf of a chief petitioner, of an
> initiative or referendum petition for the purpose of
> obtaining signatures on the petition.
>   (b) "Subcontractor" means a person who contracts
> on predetermined terms with a contractor for the
> purpose of obtaining signatures on an initiative or
> referendum petition and who has no direct contractual
> relationship with a chief petitioner or other person
> acting on behalf of a chief petitioner.
>
> (2) If a contractor has knowledge of an unreported
> violation of section 1b, Article IV of the Oregon
> Constitution, by a subcontractor, the violation by the
> subcontractor is conclusively considered a violation by
> the contractor.
>
> (3) A contractor is not liable under subsection (2) of
> this section if the contractor notifies the Secretary
> of State in writing not later than one business day
> after the contractor obtains knowledge of an unreported
> potential violation. The notice shall state:
>   (a) That a potential violation has occurred;
>   (b) The nature of the potential violation; and
>   (c) All specific information known to the
> contractor regarding the potential violation.
>
> (4) This section does not apply to a violation of law
> that is subject to criminal penalty.

11 - ORDER

Or. Rev. Stat. § 260.563.

Section 8 imposes requirements on the circulation of petitions to initiate or refer a state measure.  Section 8 provides, <u>inter</u> <u>alia</u>:

> Each sheet of signatures on an initiative or referendum petition shall:
> (A) Contain a notice describing the meaning of the color of the signature sheet in accordance with ORS 250.052; and
>
> (B) If one or more persons will be paid for obtaining signatures of electors on the petition, contain a notice stating: "Some Circulators For This Petition Are Being Paid." The notice shall be in boldfaced type and shall be prominently displayed on the sheet.

Or. Rev. Stat. § 250.045(7)(b).

> The circulator shall certify on each signature sheet of the initiative or referendum petition that the circulator:
>     (a) Witnessed the signing of the signature sheet by each individual whose signature appears on the signature sheet; and
>     (b) Believes each individual is an elector.

Or. Rev. Stat. § 250.045(9).

Sections 16-27 impose the circulator signature witness and certification requirements to various types of petitions.  Or. Rev. Stat. §§ 250.165(6)(a), 250.265(6)(a), 255.135(6)(a), 198.430(3), 198.750(4), 221.031(3), 248.008(1)(a), 249.061(4), 249.740(4), 249.865(4), 261.115(2), 545.025(4).

Plaintiffs appeared as co-plaintiffs in the state case of *Democracy Direct, Inc., v. Bradbury,* 07-c-23237 (Marion Co. Cir. Ct.).  The complaint in *Democracy Direct* alleged that HB 2082

abridged freedom of speech in violation of the Oregon and United
States Constitutions.  On January 8, 2008, Marion County Circuit
Court Judge Dennis Graves denied the plaintiffs' motion for a
preliminary injunction.  Judge Graves found that HB 2082 governs
conduct incidental to speech, but not the content of speech.
Judge Graves further found that HB 2082 constitutes a reasonable
time, place and manner restriction necessary to reduce fraud and
increase efficiency in the Oregon Initiative Process.  Following
Judge Graves' ruling, plaintiffs sought and received dismissal of
the case without prejudice.

Plaintiffs served as chief petitioners and attempted to
place initiatives on the ballot for the 2008 election cycle.
Defendants suspended plaintiffs' rights and those of other chief
petitioners to obtain signatures needed to place initiatives on
the ballot after finding that plaintiffs failed to produce
complete and sufficient "accounts."  Defendants provided
plaintiffs with notice before doing so.

C.    **Laches:**

Defendants argue that this action is barred by laches
because plaintiffs filed the complaint approximately 9 months
after the effective date of HB 2082.  However, defendants rely on
cases that are not on point because plaintiffs (unlike those in
*Oregonians for Accountability v. Bradbury,* 2004 WL 1969405 (D.Or.
2004) *or State ex rel. Keisling v. Norblad,* 860 P.2d 241 (Or.

13 - ORDER

1993)), in this instance challenge the constitutionality of an
existing statue under 42 U.S.C. §1983  Their action is timely
under that statute.

    **D.   First Amendment:**

       1.   Issue Preclusion or Collateral Estoppel

       Defendants argue that plaintiffs' First Amendment claim
is precluded because they have already litigated the same First
Amendment issues in state court where, Judge Graves denied the
plaintiffs' motion for preliminary injunction before they
voluntarily dismissed the case.

    "State law governs the application of collateral estoppel or
issue preclusion to a state court judgment in a federal civil
rights action." *Ayers v. City of Richmond*, 895 F.2d 1267, 1270
(9th Cir. 1990)(citing *Allen v. McCurry*, 449 U.S. 90, 96 (1980)).
"The burden is on the party asserting collateral estoppel to
prove its elements." *State Farm v. Century Home*, 550 P.2d 1185,
1188 (Or. 1976).

    The party asserting estoppel bears the responsibility of
placing into evidence the prior judgment and sufficient portions
of the record to enable the court to reach its conclusion with
the requisite degree of certainty.  *Id.*  A final judgment or
dismissal with prejudice is required because "an order of
dismissal without prejudice adjudicates nothing." *Koos .v Roth*,
602 P.2d 1128, 1130 (Or. App. 1979).

14 - ORDER

Defendants' evidence consists of an unsigned letter from Judge Graves to defendants' counsel indicating the judge's findings and ruling with regard to the issue of speech infringement, denying plaintiffs' motion for preliminary injunction and directing defendants' counsel to submit an order reflecting these findings and ruling.  (#41,Ex. F at 2). Defendants submit no order reflecting this ruling.

While an issue of fact may be "actually litigated" in the course of resolving a preliminary motion as defendant contends, defendants' authority[2] does not address the applicable state common law requirements for application of collateral estoppel, and does not support their argument that determinations rendered during proceedings on a motion for equitable preliminary relief are sufficiently litigated to be entitled to preclusive effect.

Because defendants are not entitled to collateral estoppel absent evidence of a prior judgment or order of dismissal with prejudice, their estoppel argument fails.

### 2.   Standard of Court's Review.

The parties initially dispute the appropriate standard of review.  Plaintiffs contend that any regulation of the petition

---

[2]     *In re Zelis*, 66 F.3d 205 (9th Cir. 1995)(bankruptcy court properly gave preclusive effect to issues supporting sanctions orders of California Court of Appeal); *Ayers v. Richmond,* 895 F.2d 1267, 1270 (9th Cir. 1990)(under California law, civil rights litigant is collaterally estopped from relitigating issues decided against him in related criminal proceedings); *Lowerison v. County of San Diego*, 26 Fed. Appx. 720, 721 (9th Cir. 2002)(same).

15 - ORDER

and referendum process is subject to strict scrutiny because it necessarily burdens political speech, and it is therefore unnecessary to assess the severity of the burden in order to determine the appropriate standard of review. Plaintiff further argues that whatever the standard of review, defendant has the burden to demonstrate that its regulations are narrowly tailored to serve the government's interest. Plaintiffs however, err in their reliance on a concurring opinion in *Buckley v. American Const. Law Foundat'n*, *Inc,* 525 U.S. 182 (1999). This court is bound by the Ninth Circuit's interpretation of the majority opinion in *Buckley* which made clear that "that the *degree* of the decrease [in the pool of available petition circulators] . . . is properly considered in determining the severity of the burden." *Prete v. Bradbury*, 438 F.3d 949, 962-63 (9th Cir. 2006).

Plaintiffs have now asked this court to consider the Supreme Court's recent decision in *Citizens United v, Federal Elections Commission,* 130 S.Ct 876 (2010) and propound that this additional authority impacts this case. [#70, 72]. Plaintiff's accurately state that one of the central issues of this court's analysis of the parties' summary judgment motions is the level of scrutiny that should be applied when analyzing the constitutionality of HB 2082. Plaintiffs then argue that the *Citizens United* case bolsters their argument that strict scrutiny should be applied because petition circulation is core political speech and First

Amendment speech is "protected from "burdensome" schemes of state regulations. [#70-pp.2-3]..

Defendants respond that while *Citizens United* did use strict scrutiny to review and invalidate a provision of federal election law prohibiting corporations from engaging in electioneering communication, it did so because unlike the regulations at issue in HB 2082, that prohibition was absolute and banned the political speech based on the speaker's corporate identity. [#71-p.1]. Defendants further assert that because HB 2082 only imposes reasonable restrictions on plaintiffs' petitioning process which is wholly unrelated to the content of the message or the identity of the speaker, strict scrutiny does not apply. After thoughtful consideration of both the *Citizens United* case and the parties supplemental briefing, I agree for the reasons detailed below.

Restrictions on petition circulation that significantly inhibit communication with voters about proposed political change impose severe burdens on core political speech and are not warranted by the state's interest in administrative efficiency, fraud detection and informed voters. *Buckley*, 525 U.S. at 192. However, restrictions that do not severely burden protected speech generally trigger a less exacting review under which reasonable, nondiscriminatory restrictions will be upheld if serving a state's important regulatory interest, such as

17 - ORDER

administrative efficiency and fraud detection. *Prete*, 438 F.3d
at 968; *Buckley*, 525 U.S. at 204-05.

Citing to other circuit's precedent[3], plaintiffs contend
that the court should add together all the burdens HB 2082 places
on petition circulation, and conclude that the cumulative burden
is severe.  However their reliance is again misplaced; first,
because the case cited does not endorse such an approach and
second, because the *Buckley* Court considered each regulatory
requirement individually, holding some unconstitutional while
upholding others.

### 3.   Circulator Registration, Permit & Training

Plaintiffs argue that the circulator registration and
training requirement is slow and subject to abuse.  The parties
submit competing affidavits regarding whether it is or not.[4]
However, whether the registration, permit and training process is
slow or not is irrelevant to plaintiffs' facial challenge.  The
statute requires the Secretary to process the application within
two days of receipt of the required information.  Or. Rev. St. §
250.048(4).  Assuming for argument's sake, that defendants'
compliance officer took a longer time to register some qualified
applicants than others, such delay is not attributable to the

---

[3]    *Citizens for Tax Reform v. Deters*, 518 F.3d 375 (6th Cir.
2008).

[4]    See e.g. #42, Att. 2 Trickey Aff.; #54 Blaszak Aff.

18 - ORDER

statute itself.

The language of the statute is not so vague that defendant is without guidance regarding how to apply the registration requirement.  Nor does the statute authorize defendants to deny a permit for the reasons complained of by plaintiffs.  The statute requires paid circulators to register with the State in order that the signatures they gather count.  The statute further informs applicants of the specific information they must provide in order to so register.

The *Buckley* Court overturned Colorado's requirement that petition circulators be registered voters.  That requirement severely burdened the core political speech of petition circulation because it reduced the pool of available circulators by approximately 400,000 people.  However, this statute's registration and training requirements do not reduce the number of available circulators any more than the affidavit requirement which was upheld in *Buckley*.

I find that the registration and training requirements impose less than severe burdens on core political speech.  I further find that lesser burden is justified by Oregon's interest in ensuring compliance with the Oregon Constitution's prohibition against payment of petition circulators on a per signature basis.

        4.   Registration and Identification Requirements

        Plaintiffs contend that the requirements that paid

19 - ORDER

circulators register, carry proof of registration and utilize signature sheets of a certain color discourage paid circulators. They further argue that those requirements also enable opponents of particular initiatives (or the initiative process in general), to identify, locate and harass paid circulators.

Plaintiffs' declarant Dan Harwig, partner in H&H Petition Management, states that his company will not return to Oregon to circulate petitions in Oregon because of the requirements that circulators register, complete a training program, and carry an identification badge. (#42, Att.3, Harwig Decl). Harwig further states that the identification badge and registration requirements remove the ability to circulate petitions anonymously. *Id.* Plaintiffs' affiant David Hunnicutt states that he will no longer serve as a chief petitioner in Oregon in part because of the requirements of HB 2082 that paid circulators register, complete training, and carry identification badges. (#42, Att.3, Hunnicutt Aff.).

I note however, that the statute does not require paid circulators to carry identification badges, rather, it requires paid circulators to carry and produce to certain state officials, proof of registration. I therefore find that requiring paid circulators to provide identifying information to the state - information that is already available by public records request- does not so restrict speech as to violate the First Amendment.

20 - ORDER

*Buckley*, 525 U.S. at 200.  That requirement serves important state interests and does not restrict speech between the paid circulator and voter when the circulator is seeking the voter's signature.

Similarly, the requirements mandating that the paid circulator carry proof of his or her registration and utilize a colored signature sheet does not interfere with circulator/voter interaction.  The statute's requirements are easily distinguished from the identification badge requirement that the *Buckley* Court struck down.  Here the circulator is not required to show proof of registration to the voter nor does the registration contain any identifying information.  The requirement that circulators carry and produce proof of registration to state officials narrowly serves the state's purpose of verifying that paid circulators are registered.

Plaintiffs do not explain how signature sheets being colored rather than plain white, might impermissibly burden speech.  The colored sheets do not disclose whether or not the circulator is paid.  Defendant has produced evidence that the colored signature sheets permit defendant's staff to focus resources toward the signature sheets which have proven more likely to contain fraudulent signatures, namely those of paid circulators.

I therefore find that the registration of paid circulators, the requirements that they carry proof of that registration and

21 - ORDER

that their signature sheets be colored paper impose less than

severe burdens on core political speech.  I further find that

those lesser burdens are justified by Oregon's interests in

administrative efficiency and ensuring compliance with the Oregon

Constitution's prohibition against payment of petition

circulators on a per signature basis.

          5.   Chief Petitioner Account Requirements

     Plaintiffs have produced evidence that defendants suspended

their ability (as well as those of eighteen other chief

petitioners), to obtain additional signatures because the

accounts they produced were incomplete or insufficient for

defendants to determine whether or not the chief petitioners had

violated the Oregon Constitution's prohibition against paying

circulators by the signature.  Plaintiffs assert that this

evidence supports their assertion that the statute lacks

sufficient standards to constrain defendants and authorizes the

complete restriction of core political speech.  Therefore

plaintiffs argue, this court should subject the statute to the

most exacting scrutiny.

     Plaintiffs further contend that as a result of HB 2082,

there has been an increase in the cost to qualify a petition for

22 - ORDER

the ballot[5] which severely burdens core political speech.
Plaintiffs do not however, state what amount of their estimated
cost increase would be attributable to requirements that chief
petitioners keep account records.

The power of the Secretary to suspend chief petitioners for
failure to produce detailed accounts does not confer sufficient
discretion upon the State to violate the First Amendment rights
of the chief petitioners.   *Thomas v. Chicago Park Dist.,* 534
U.S. 316, 322 (2002)(holding that a content-neutral licensing
statute that authorized denial of the license for an incomplete
application did not confer sufficient unconstrained government
discretion to violate the First Amendment.).   The requirement
that a chief petitioner produce detailed accounts is sufficiently
similar to the requirement that the applicant in *Thomas* provide a
complete application that I conclude that the accounts keeping
requirement does not severely burden speech and does serve the
substantial State purpose of determining compliance with the
Oregon constitution's legitimate prohibition against paying
circulators on a per signature basis.

        6.   Signature Witnessing and Contractor Liability

        Similarly, based on the parties' briefing I find that

---

        [5]     E.g., #42, Att. 3, Arno Aff contending an increase cost per
petition post HB 2082 of $170,000; #42, Att.2. Trickey Aff., statutes'
additional requirements will cost $1,000 per month per petition;
*Citizens for Tax Reform,* 462 F.Supp.2d 827, (S.D Ohio 2006)

23 - ORDER

the statute's two requirements that (1) circulators witness signatures and that (2) known but unreported subcontractor violations of the prohibition of per signature payment to circulators being imputed to the contractor, serve the state's interest in preserving valid petition signatures and compliance with the Oregon Constitution while imposing lesser burdens on speech.  The signature witnessing and contractor liability provisions of HB 2082 do not therefore violate the plaintiffs' First Amendment rights.

**E.  Due Process**

Plaintiffs argue that O.R.S. § 260.262(6) permits the deprivation of fundamental liberty interests in the form of core political speech without due process because defendants have suspended chief petitioners for producing insufficient or incomplete accounts.  Plaintiffs also contend that the statute provides no process or standards by which chief petitioners may determine the sufficiency of their accounts before defendant suspends them, and that pre-deprivation notice and hearing is required, since chief petitioners cannot be made whole by post-deprivation process.

Defendants concede that plaintiffs have a protectable liberty interest in circulating petitions, and that HB 2082 provides no process for challenging the deprivation of that interest.  Defendants argue however, that chief petitioners have

24 - ORDER

the Oregon Administrative Procedure Act by which they can
challenge defendant's determinations and in practice, no chief
petitioner has ever been suspended without an opportunity to
explain or correct the situation.

The Court has specifically rejected the proposition that due
process *always* requires the State to provide a pre-deprivation
hearing. *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). To
determine what process is constitutionally required the Court has
generally balanced three factors: "first, the private interest
that will be affected by the official action; second, the risk of
erroneous deprivation of such interest through the procedures
used and the probable value, if any, of additional or substitute
procedural safeguards and finally, the Government's interest."
*Id.* (quoting *Matthews v. Eldgridge,* 424 U.S. 319, 335 (1976))
Due process requirements are thus "flexible and call for such
procedural safeguards as the situation demands." (internal
quotations and citations omitted). The Court has further found
that:

> "The timing and nature of the required hearing will
> depend on appropriate accommodation of the competing
> interests involved. These include the importance of
> the private interest and the length or finality of the
> deprivation, the likelihood of governmental error, and
> the magnitude of the government interests involved."

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982)(internal
citations omitted).

Under HB 2082 while there are not well defined explanations

25 - ORDER

of the specifics of what a detailed accounting is, in practice
all chief petitioners have been given the opportunity to explain
and/or correct their accounting reports.  Furthermore a chief
petitioner can petition for review of a suspension under the
Oregon APA.  State interests in maintaining the integrity of the
petitioning process are significant and outweigh the burden these
statutory requirements to keep and submit detailed accounts place
on chief petitioners.  In light of the well established case law
disfavoring statutory facial challenges on grounds outside the
First Amendment, and for the above noted reasons, I find that
chief petitioners due process rights are not sufficiently
burdened by the statutory requirements regarding chief petitioner
accounts to invalidate the statute.

     **F.  Equal Protection**

Plaintiffs cite a line of Supreme Court cases to support
their claim that because HB 2082 contains no procedures by which
to rebut the presumption of violation of the prohibition against
paying circulators on a per signature basis, the putative
rebuttable presumption is actually irrebuttable.  <u>See</u> <u>e.g</u>.
*Carrington v. Rash*, 380 U.S. 89 (1965)(Texas constitutional
provision provided that military servicemen who moved to Texas in
the course of service are ineligible to vote as long as they
remain in the service in Texas); *Stanley v. Illinois*, 405 U.S.
645 (1972)(statute that created irrebuttable presumption that

unwed fathers are unfit parents denied unwed fathers of fitness hearing to which all Illinois parents are entitled, in violation of Equal Protection Clause).[6]

Defendant contends that plaintiffs misread the statute, which creates a rebuttable presumption.  Defendant further argues that plaintiffs misunderstand defendant's determinations with respect to chief petitioners because no chief petitioner has ever been suspended for violation of the prohibition against paying circulators on a per signature basis, and furthermore plaintiffs fail to identify other persons who have been treated differently than plaintiffs.

While it does not appear that plaintiffs are misreading the statute's rebuttable presumption, their equal protection theory fails because the Secretary's authority for suspension results not from what plaintiff deems an irrebuttable presumption, but from the alleged failure of the chief petitioners' to produce the required detailed records of accounts.  Even if the Secretary erroneously classified plaintiffs, she did so in spite of, and not because of, the language of the statute.

G.   **Fourth Amendment**

---

[6]     Plaintiffs also rely on *Vlandis v. Kline*, 412 U.S. 441 (1973), which involved Connecticut university students challenging a statute that created an irrebuttable presumption of non-resident status for purposes of tuition and fees.  Although *Vlandis* did cite *Carrington*, *Vlandis* interpreted the Due Process Clause, not the Equal Protection Clause.

Plaintiffs assert that HB 2082's requirement that chief petitioners produce payroll records and private contracts to the state violates the Fourth Amendment's prohibition against unreasonable searches.  The parties dispute whether society recognizes a reasonable expectation of privacy in payroll records and contracts required to be maintained by chief petitioners. Plaintiffs characterize this dispute as a disputed issue of fact precluding summary judgment however they cite no cases recognizing such privacy interests.

"The Supreme Court has been especially reluctant to invalidate statutes on their face under the Fourth Amendment." *Warshak v. U.S.*, 532 F.3d 521 (6th Cir. 2008).  The Court further instructs that a balance between the public interest at issue and the individual's right to personal security and privacy must be weighed.  *Brown v. Texas*, 443 U.S. 47, 52 (1979).

While there is evidence here that plaintiffs turned over records, there is no evidence regarding the content of the records.  I therefore cannot determine whether expectations of privacy in the records would be reasonable and given the important public interest in maintaining the integrity of the petition process will not invalidate the statute based on mere speculation.

<u>Conclusion</u>

Based on the foregoing, defendant's motion to strike [#48]

28 - ORDER

is DENIED.  Defendants' motion for summary judgment [#37] is
GRANTED.  Plaintiffs' cross motion for summary judgment [#44] is
DENIED.  This action is dismissed with prejudice.

      IT IS SO ORDERED.

_____DATED this ____19th____ day of March, 2010.


                              ____s/ Michael R. Hogan_____
                              United States District Judge


29 - ORDER